**Vassil KRASTEV, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 95–3957.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 4, 1996.

Decided Dec. 4, 1996.

Ralph M. Schelly (argued), Paul B. Axelrood, Chicago, IL, for Petitioner.

Karen Fletcher Torstenson, Department of Justice, Office of Immigration Litigation, Washington, DC, Samuel Der-Yeghiayan, Immigration & Naturalization Service, Thomas P. Walsh, Office of the United States Attorney, Civil Division, Chicago, IL, David M. McConnell, Stephen W. Funk, Marion E. Guyton, Michelle R. Slack (argued), Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before CUMMINGS, COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Petitioner Vassil Krastev ("Krastev") seeks review of the affirmance by the Board of Immigration Appeals ("BIA") of the decision of an Immigration Judge ("IJ") denying Krastev's request for political asylum, or in the alternative, withholding of deportation. The sole issue before us is whether the decision of the BIA was supported by substantial evidence. We affirm.

## I. BACKGROUND

Krastev is a 42–year old male who was born in and is a citizen of Bulgaria. He entered the United States on a non-immigrant visitor visa on August 9, 1990. The visa authorized him to remain until February 7, 1991, but Krastev did not depart the U.S. in a timely fashion, and on September 14, 1994, he was issued an Order to Show Cause alleging his deportability for remaining beyond his visa period.

Krastev admitted his deportability at the initial hearing on December 23, 1994, and requested asylum and/or withholding of deportation pursuant to sections 208(a) and 243(h) of the Immigration and Nationality Act (the "Act"). 8 U.S.C. §§ 1158(a), 1253(h). The Act provides the Attorney General discretion to grant asylum and/or withholding of deportation to applicants who can prove their status as "refugees" as the Act defines that term. After Krastev filed a formal application for asylum and/or withholding of deportation, a second hearing was held on April 6, 1995.

In his application and at the April 6 hearing, Krastev asserted that his request was based on threats against his life made by Bulgarian communist authorities while he was living in Bulgaria, as well as past persecution and murder of his family members. Krastev also asserted his belief that, if he were forced to return to Bulgaria, he would be subjected to persecution and his life would be threatened due to his familial affiliation and his anti-communist political beliefs. He testified that his family had been wealthy landowners and supporters of the monarchy which ruled Bulgaria prior to the communist takeover. Krastev stated that his grandfather and uncle had been persecuted by the communists, and that his uncle eventually fled in 1945 to avoid communist attempts to kill him. Krastev further alleged that his father had been murdered by communists while on a trip to Czechoslovakia in 1987, but he failed to present any evidence that his father's death was caused by other than natural causes or that it was perpetrated by Bulgarian communists, except for the fact that he "strongly believe[d]" this to be true. He did testify that people in the streets whom he believed to be affiliated with the communists warned him not to investigate his father's death or he would be killed himself.

As to alleged persecution he suffered personally, Krastev asserted that it began in 1973, when he refused, because of his opposition to the communist regime, to serve in the Bulgarian army. Krastev testified that the authorities accepted his refusal to serve in the military, and assigned him to work in a steel plant, and assigned him to what he felt were the most physically demanding and dangerous jobs. Krastev worked at this plant for five years, and acknowledged that he was paid for his work; he claimed, however, that the work was not commensurate with his educational experience, for he was trained as an electrical engineer.

While working at the plant, Krastev completed a bachelor's degree in economics, and in 1983, he moved into a new position as payroll administrator and economist with the same employer. While working in this capacity, Krastev claimed that he uncovered black market fraud on the part of his superiors, one of whom was a communist party official. Krastev claimed that, as a result of his refusal to participate in the scheme and his reporting the scheme to a Bulgarian court in 1987, he was threatened with death or imprisonment by co-workers and supervisors who were party members and officials. Krastev eventually left that job in 1988, and found work with a government savings bank, where he worked until he departed from Bulgaria for the United States in September 1990.

Krastev testified that, after leaving his former job in 1988, his life continued to be

threatened by his former co-workers until he left the country. He admitted, however, that he had never been jailed while in Bulgaria, save a very brief detainment related to an incident involving theft at his job, for which it does not appear from the record that Krastev was responsible, and for which he was not convicted or imprisoned. Krastev also admitted in his application that he belonged to no political organizations or groups, and there is nothing in the record, save Krastev's testimony that he made his anti-communist views well known to friends and acquaintances, that he was ever involved in any organized anti-communist activity in Bulgaria. Krastev was apparently able to obtain a Bulgarian passport without difficulty and was permitted to travel to the United States at the time of his visit in 1990.

The IJ ruled that Krastev had failed to sustain his burden of proof as to both the application for asylum and for withholding of deportation. The IJ concluded that Krastev's testimony was "selfserving and uncorroborated," and also concluded that there was "little likelihood," based even on Krastev's testimony, that he would be harmed if he returned to Bulgaria. In affirming the IJ, the BIA concluded that Krastev had failed to carry his burden of proof to establish past persecution or a well-founded fear of future persecution. Krastev petitioned for review by this court.

## II. DISCUSSION

■ Krastev argues, in effect, that the decision of the BIA affirming the IJ's conclusion that Krastev had not shown he was eligible for asylum and/or withholding of deportation was not supported by substantial evidence. We disagree.[1]

■ Under section 208(a) of the Act, the Attorney General is given discretion to grant asylum to any alien who qualifies as a "refugee." 8 U.S.C. § 1158(a). The Act defines a refugee as one who is unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). For a deportable alien to obtain asylum under this section of the Act, two steps are required. First, the alien must establish that he is statutorily-eligible for asylum; that is, that he is a "refugee" as defined in the Act. *Mitev v. INS*, 67 F.3d 1325, 1329 (7th Cir. 1995), *reh'g denied.* Second, if the alien has established statutory eligibility, the Attorney General in her discretion may, but is not required to, grant the alien asylum. *Id.; Palacios–Torres v. INS*, 995 F.2d 96, 97 (7th Cir.1993).

■ The petitioner bears the burden of proving his statutory eligibility, and where, as here, we review the BIA's finding that the alien is not statutorily-eligible (i.e., is not a "refugee"), our review is limited to determining whether the BIA's decision is supported in the record with substantial evidence. *Urukov v. INS*, 55 F.3d 222, 226 (7th Cir. 1995); *Milosevic v. INS*, 18 F.3d 366, 370 (7th Cir.1994). This is a highly deferential standard, and the BIA's findings must be upheld if "supported by reasonable, substantial, and probative evidence on the record as a whole." *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992) (quoting 8 U.S.C. § 1105a(a)(4)); *Urukov*, 55 F.3d at 227. Reversal of a determination denying statutory eligibility in this regard can be justified "only if the evidence presented ... was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *Elias–Zacarias*, 502 U.S. at 481, 112 S.Ct. at 815.

Krastev's claims of eligibility fall under three basic headings. First, he claims to

---

1. We acknowledge the assertion in the INS' brief that we should deem Krastev's arguments waived because they are directed to the IJ's decision, as opposed to the decision of the BIA, which is properly before us. *See generally Castillo–Rodriguez v. INS*, 929 F.2d 181, 183 (6th Cir.1991). However, examination of Krastev's brief reveals that, while it does reference the IJ's rationale for

denying Krastev's application, its primary focus is on the alleged strength of the evidence Krastev presented at the hearing. Therefore, we construe Krastev's argument to be that, in light of the alleged strength of his evidence, neither the IJ's nor the BIA's rationale serves to support the decision denying his application.

have a well-founded fear of persecution based upon membership in a "particular social group," namely, his family. Second, he argues. that his experiences at the steel plant following his refusal to serve in the Bulgarian military constitute past persecution based upon his anti-communist political opinion. Finally, Krastev asserts that he has a well-founded fear of personal future persecution because of his discovery and reporting of the black market fraud while employed as a payroll administrator after moving out of the steel plant. After reviewing the evidence Krastev offered, as well as his arguments, it is apparent that the BIA's decision that Krastev failed to meet his burden of establishing statutory eligibility was supported by the evidence.

As to Krastev's claim of a well-founded fear based upon past persecution of his family by the Bulgarian government, the BIA concluded that Krastev had simply failed to present evidence that the Bulgarian government was involved in his father's death, and this finding is supported by Krastev's own tacit admission at the hearing that he had no personal knowledge of the government's involvement, but was basing his conclusion simply on his beliefs. Further, to the extent Krastev's claims of a well-founded fear of persecution rely on the alleged harassment suffered in 1945 by his grandfather and uncle, we conclude, especially given the vague nature of the allegations and the significant lapse of time since the alleged harassment, that it was reasonable for the BIA to determine that these events do not give rise to a "well-founded" fear of persecution on Krastev's part were he to return to Bulgaria now. *See Mitev*, 67 F.3d at 1331–32 (even if fear of persecution is genuine, applicant must demonstrate that a reasonable person would also entertain fear).[2]

■ With respect to Krastev's experiences at the steel plant following his refusal to serve in the Bulgarian military, initially we note that it is not "persecution" for a govern-

ment to require military or an alternative service of its citizens. *See Urukov*, 55 F.3d at 228. Further, Krastev, aside from alleging that he was given particularly hard work not commensurate with his training, acknowledges that he received compensation for his services, and does not make any particular allegations of mistreatment that come even close to constituting "persecution" under the Act. *See Balazoski v. INS*, 932 F.2d 638, 641 (7th Cir.1991) (at a minimum, "persecution" requires a level of violence and/or physical abuse). Apart from the brief questioning relative to an alleged theft of materials, it does not appear that Krastev has ever been imprisoned or otherwise suffered even marginally serious harassment at the hands of the Bulgarian government; certainly the record is barren of evidence that he has ever in fact been physically abused by the government.[3] In fact, upon receiving his bachelor's degree, Krastev was moved out of the steel mill and into an apparently clerical- or administrative-type position. In short, nothing that occurred at the plant even arguably constituted "persecution" as contemplated by the Act, and of course, to warrant a reversal by this court, Krastev must show much more than that.

■ Finally, consideration of Krastev's allegations of repercussions he suffered on account of his exposure of the black market fraud reveals that they do not necessitate disagreement on our part with the conclusion reached by the BIA—namely, that this constituted a "private" dispute the likes of which are not protected under the Act. *Cf. Elias–Zacarias*, 502 U.S. at 482, 112 S.Ct. at 816 (disputes covered by Act are those in which victim is persecuted on account of his political beliefs or opinion). Krastev alleged, before the BIA, that his supervisor was a communist party official who was in a position to bring government reprisals down on him for his exposure of the fraud. Nonetheless, the BIA concluded that Krastev had failed to

---

2. Thus, like the BIA, we see no necessity to address the issue of whether Krastev's familial affiliation constitutes a social group for purposes of the Act.

3. Even if we were to assume that Krastev's detention related to the alleged theft was politically motivated, it would not amount to persecution. *See Skalak v. INS*, 944 F.2d 364, 365 (7th Cir. 1991) ("brief detentions and mild harassment" by themselves do not constitute persecution).

establish either that the Bulgarian government permitted such harassment in the past or that it would permit such conduct upon Krastev's return to Bulgaria. Again, the BIA's decision on this matter is supported by the record, which consists entirely of Krastev's generalized and unsubstantiated assertions of fear.

In passing, we note that Krastev's case, like many other petitioners' cases, was based merely on his assertions, with little if any supporting evidence presented. It is true, as Krastev notes, that an applicant's testimony alone may be sufficient to sustain a decision granting asylum where the testimony articulates "credible subjective evidence" substantiating an applicant's claim. *Dolores v. INS*, 772 F.2d 223, 226 (6th Cir.1985). However, here we are faced with a different matter—a request that we overturn a BIA decision denying asylum based solely upon an applicant's testimony, and without objective support in the record. We need not, and do not, suggest doubt as to the sincerity of Krastev's fears or testimony in concluding that nothing presented to us here warrants a disturbance of the BIA's findings.[4]

Finally, in light of our determination that Krastev failed to establish that the BIA erred in concluding that he has not met his burden with respect to establishing eligibility for asylum, we must also conclude that Krastev failed to carry his burden with respect to withholding of deportation. Withholding of deportation carries an even higher burden of proof than does asylum, and our conclusion that the BIA's decision with respect to asylum should be affirmed necessarily means that its decision regarding withholding of deportation should be treated likewise. *Mitev*, 67 F.3d at 1333; *Urukov*, 55 F.3d at 230; *Milosevic*, 18 F.3d at 372.

## III. CONCLUSION.

Under the terms of the Immigration and Nationality Act, Krastev bore the burden of establishing that he was eligible for asylum and/or withholding of deportation on account of his status as a "refugee" as that term is defined in the Act. The BIA found that he had not done so, and its decision was supported by substantial evidence. We affirm.

---

4. We note further that, while the BIA did not base its decision upon the extent to which conditions in Bulgaria may have changed since the country now engages in the democratic process, the State Department's January 1995 profile of Bulgaria, which is a part of the record, stated that there was "no information" that the democratically-elected authorities are moving against "politically uncongenial elements." Record at 75.