FLAUM, Circuit Judge.
 

 Dimitre Tzankov petitions this court for review of the decision of the Board of Immigration Appeals denying his request for asylum.
 
 [1]
 
 The Board determined that petitioner had failed to establish a well-founded fear of persecution should he return to his native Bulgaria. We . conclude that substantial evidence supports the decision of the Board and therefore affirm.
 

 I.
 

 . Dimitre Tzankov is a forty-nine-year-old native of Bulgaria. He entered the United States as a visitor for pleasure in 1990 and has resided in the United States since that time with his twenty-year-old daughter, Mo-nika Tzankov, also a Bulgarian national. Following the denial of petitioner’s initial application for asylum, the INS issued an Order to Show Cause and Notice of Hearing. Petitioner, represented by counsel, admitted the factual allegations in the Order to Show Cause and conceded that he was subject to deportation. Petitioner then filed a second application for asylum, which was denied by the immigration judge on the ground that petitioner had failed to demonstrate an objectively reasonable fear of persecution. The Board of Immigration Appeals affirmed.
 

 At hearings held before the immigration judge on June 10, 1994 and April 18, 1995, Tzankov related the following personal and family history. Petitioner was bom in Vidin, Bulgaria. He attended high school in Bulgaria and participated in competitive athletic events throughout the country. After performing two years of required military service, petitioner attended college, received a bachelor’s degree in engineering, and became employed as a project engineer, a supervisory position.
 

 Tzankov testified that his family held anticommunist beliefs and that his father was a member of “Brannik,” an underground group organized to unite youth in the fight against communism. In 1949, when petitioner was two years old, his father was killed while on active military duty at an ammunition dump. It is petitioner’s personal belief that his father was murdered because of his anti-communist views. Petitioner’s uncle, Hija Vrba-noff, testified that he likewise believes that
 
 *-1066
 
 petitioner’s father was killed due to his political beliefs. Petitioner testified that the family hid the circumstances of his father’s death from him until 1987. The cause of death on his father’s death certificate was listed as suicide. Petitioner believes that the death certificate was fabricated so as to prevent him from receiving a government pension.
 

 Vrbanoff, petitioner’s uncle, testified that he fled Bulgaria in 1951, before he was required to serve in the army, because he feared that he would be killed as his brother had been. In retaliation for his uncle’s leaving Bulgaria, the government forcibly relocated the remainder of petitioner’s family to another region of Bulgaria for five years and confiscated their property. Petitioner was not among those family members relocated, because he and his mother lived with his maternal grandfather at the time of the relocation. Vrbanoff testified that he was sentenced to death.for his escape but that he was granted amnesty in 1991. He returned to Bulgaria in 1991 and in 1992 in an effort to recover family property that had been nationalized. He was not approached by authorities during either visit.
 

 Of the incidents of persecution alleged by petitioner, only one occurred in his youth. In 1965, while in high school, petitioner was detained by police for two days on suspicion that he placed a soiled piece of paper in a box of bread in a local bakery. He was released and permitted to resume his education after two days of detention.
 

 Between 1980 and 1985, Tzankov and his former wife, Violetka, lived in Libya where Tzankov was employed as an engineer. His wife worked for the Bulgarian government as an economist, but later found a job at the Bulgarian Consulate, where she worked for two months before returning to Bulgaria for a vacation. She was fired from this position when she returned to Libya. Petitioner believes that his wife lost her job at the Consulate because the government learned of her association with his family. Petitioner was not fired from his job, and his wife was able to obtain a job as a draftsperson in the company where petitioner worked. Tzan-kov’s daughter did not accompany her parents to Libya, but instead remained in Bulgaria to continue her education.
 

 Tzankov described an occurrence in 1987, when police prevented him from helping a Turkish man leave for Turkey, as evidence of past persecution. Petitioner had wanted to give the Turkish man his car in exchange for the man’s apartment. He was prevented from doing so by threat of prosecution. Also in 1987, petitioner began to politically support a friend from college, Ventsislav Dimi-trov, who had become a leader in the anticommunist movement. Tzankov claims that his telephone calls with Dimitrov were monitored and that he was threatened.
 

 Petitioner also testified that he was involved in 1990 in an altercation in a restaurant with another customer who was a police officer. In 1994, petitioner’s mother received a summons for him which he believes related to this incident. The petitioner contends that the summons was sent to punish him for his opposition to the government and his association with Dimitrov.
 

 In 1989, Tzankov and fifteen others attempted to organize a branch of the trade union Podkrepa at Tzankov’s place of employment. The deputy director general opposed the union and, in December 1990, threatened petitioner with the loss of his job. Tzankov’s political involvement increased and he participated in some anti-communist demonstrations. Petitioner was fired from his job in June 1990. He believes that he was fired because of his political views. He left for the United States the following month.
 

 In addition to the above testimony, an advisory opinion from the Office of Asylum Affairs of the Department of State
 
 [2]
 
 was considered by the immigration judge. This opinion states:
 

 Despite [Tzankov’s] claim to have been in difficulties with the authorities the applicant obtained an excellent education and . was able to work in Libya, an assignment highly prized by Bulgarians for financial and other reasons, where moreover his wife worked for the Embassy. His assignment to Libya can be considered a mark of
 
 *-1065
 
 official confidence. His support for Pod-krepa places him in the mainstream of Bulgarian political life. Even major former dissidents return freely to Bulgaria. We are unable to discern any basis on which a plausible case can be based that [Tzankov] faces mistreatment on his return to his own country.
 

 This opinion was supplemented by the State Department’s Profile of Asylum Claims and Country Conditions for Bulgaria. According to this profile, “country conditions have so altered as to remove the presumption that past mistreatment in the Communist years will lead to mistreatment in the future.” Further, the State Department is unaware of any punishment of or stigma attached to those who return to Bulgaria voluntarily or otherwise.
 

 II.
 

 The Attorney General is granted the discretion under 8 U.S.C. § 1158(a) to grant asylum to an alien who qualifies as a “refugee.” A “refugee” is defined as one “who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion_” 8 U.S.C. § 1101(a)(42)(A). “To show a “well-founded fear’ a petitioner must demonstrate that the fear is (subjectively) genuine and that it is reasonable in light of the (objective) credible evidence.”
 
 See Najafi v. INS,
 
 104 F.Sd 943, 946, (7th Cir.1997) (quoting
 
 Dobrican v. INS,
 
 77 F.3d 164, 167 (7th Cir.1996)). The Board concluded that Tzankov’s fear of persecution was not objectively reasonable in light of the evidence and that he therefore did not qualify as a “refugee” under the Act.
 

 “Whether a person is a ‘refugee’ is a factual determination that we review under the substantial evidence test.”
 
 Urukov v. INS,
 
 55 F.3d 222, 227 (7th Cir.1995);
 
 see also Krastev v. I.N.S.,
 
 101 F.3d 1213, 1216 (7th Cir.1996). We will uphold the Board’s decision if it is “supported by reasonable, substantial, and probative evidence on the record considered as a whole.”
 
 INS v. Elias-Zacarias,
 
 502 U.S. 478, 481, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992);
 
 see also Urukov,
 
 55 F.3d at 227;
 
 Milosevic v. INS,
 
 18 F.3d 366, 370 (7th Cir.1994). Under this highly deferential standard of review, we reverse “only if the evidence presented ... was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed.”
 
 Id.
 

 III.
 

 Tzankov contends that no reasonable factfinder could have failed to find that his fear of persecution was objectively reasonable.
 
 [3]
 
 He claims that his fear of persecution due to his anti-communist activities and those of his family, specifically his father and uncle, is well-founded. Our review of the record confirms that substantial evidence exists in support of the Board’s finding that Tzankov’s fears are not objectively reasonable.
 

 As the Board noted, nothing in the State Department’s reports indicates that the Bulgarian government currently seeks to punish those who opposed the former communist regime.
 
 See
 
 Department of State, 103d Cong., CountRy Reports on Human Rights PRACTICES for 1993 (Comm. Print 1994). To the contrary, the reports and advisory opinion indicate that freedom of speech and press
 
 *-1064
 
 are generally respected and that “even major former dissidents return freely to Bulgaria.”
 
 See generally Mitev,
 
 67 F.3d at 1332 (noting that great weight given to opinions of State Department within its area of expertise);
 
 Kaczmarczyk v. I.N.S.,
 
 933 F.2d 588, 594 (7th Cir.1991) (same). Likewise, the experience of petitioner’s uncle suggests that petitioner’s concerns are not well-founded. Tzankov claims that his uncle’s flight from Bulgaria and the subsequent displacement of his family cause him to fear that he will be killed or imprisoned should he return to Bulgaria. Petitioner’s uncle, however, has returned to Bulgaria on two relatively recent occasions without incident and taken steps to reclaim the family property that had been nationalized.
 

 Tzankov also maintains that his father’s alleged murder by the communists causes him to fear for his own life. As an initial matter, we agree with the Board that Tzankov failed to present any direct evidence that his father was killed by communists. This determination is supported by the petitioner’s own testimony that he was unaware of the circumstances surrounding his father’s death until 1987. In any event, the record contains no evidence that petitioner has ever been subjected to persecution due to his familial relation to his father and uncle.
 
 See Najafi,
 
 104 F.3d at 947-48 (stating that persecution of petitioner’s relatives does not prove that petitioner himself will be subject to persecution). His own testimony regarding the conditions of his life in Bulgaria is to the contrary: he received a good education, held a respectable position in his field of employment, and was permitted to travel abroad. Petitioner points to only one incident, which occurred in 1965 when he was in high school, when he was detained by police for two days. We agree with the Board that this incident does not rise to the level of persecution.
 
 See, e.g., Krastev,
 
 101 F.3d at 1217 (citing
 
 Skalak v. I.N.S.,
 
 944 F.2d 364, 365 (7th Cir.1991) (“brief detentions and mild harassment” by themselves do not constitute persecution)). Petitioner also has not presented evidence that this event was in any way related to his father’s political beliefs. Rather, the evidence suggests that he was detained because he was suspected of vandalism.
 

 Finally, the record also indicates that petitioner’s mother currently resides in Bulgaria and receives a government pension. No evidence was presented which would indicate that she fears for her safety.
 
 See Mitev,
 
 67 F.3d at 1332 (upholding Board’s denial of asylum and noting that petitioner’s family had not been harassed in his absence, nor had authorities expressed an interest in him since his departure). Petitioner himself must have considered the conditions in Bulgaria to be safe, as he left his daughter in Bulgaria with family members while he and his wife worked in Libya. We conclude that there is substantial evidence in the record to support the Board’s finding that petitioner’s fears of persecution as a result of his family’s past anti-communist activities are unfounded.
 

 Tzankov also maintains that he fears future persecution as a result of his own past anti-communist activities. Petitioner, however, has provided no evidence that he has ever been subjected to treatment that would rise to the level of persecution as a result of his political activities. As the Board noted, the threats received by Tzankov due to his support of Dimitrov do not alone amount to persecution.
 
 See Balazoski v. I.N.S.,
 
 932 F.2d 638, 642 (7th Cir.1991) (harassment not persecution). In addition, we agree with the Board that it would not be objectively reasonable for petitioner to fear persecution on the basis of his relationship with Dimitrov, who held the position of Prime Minister of Bulgaria from 1991 to 1992 and currently remains in Parliament as the leader of the major opposition party, the Union of Democratic Forces.
 

 Tzankov contends that his wife’s termination from her position at the Bulgarian Consulate is evidence that he and his wife were singled out for persecution. The advisory opinion issued by the State Department suggests that the fact that petitioner and his wife held their positions in Libya could be considered a mark of official confidence and also indicates that these positions are prized by Bulgarians. Although it is petitioner’s belief that his wife was terminated because it was discovered by authorities that she was
 
 *-1063
 
 affiliated with Ms family, tMs is mere speculation. Further, the evidence does not support tMs conclusion, as petitioner was not terminated and Ms wife was able to secure a new position.
 

 According to Tzankov, Ms former involvement with the Podkrepa labor urnon also causes him to fear persecution. These fears are equally unfounded. According to the State Department, the 1991 Bulgarian Constitution guaranteed the right of workers to form and join trade umons of their choice and tMs right is “freely exercised.” Podkrepa, the umon for wMeh Tzankov was an organizer in 1989, is now one of the two major trade umons in Bulgaria.
 
 See Mitev,
 
 67 F.3d at 1333 (noting that Podkrepa “is no longer regarded as a subversive or dissident organization” and has for several years “been a major political player in Bulgaria”). We take notice of the State Department’s advisory opmion, wMch states that petitioner’s “support for Podkrepa places him in the mainstream of Bulgarian political life.”
 

 Finally, the Board found that the summons received by Tzankov provided no support for Ms claim that he was being targeted for Ms political beliefs. We agree with Board that the summons was merely a notice in a civil action. TMs incident is therefore irrelevant, as the Immigration and Nationality Act covers persecution on account of political opmion, not private non-political disputes.
 
 See Krastev,
 
 101 F.3d at 1217.
 

 Tzankov has failed to meet his burden of proving an objectively reasonable fear of future persecution based either on the past treatment received by family members for their anti-communist activities or as a result of Ms own anti-communist activities. We conclude that substantial evidence supports the Board’s determination that Tzankov failed to establish that he is statutorily eligible for asylum as a refugee. We therefore AFFIRM.
 

 [1]
 

 . The petition for review filed in this case was filed on behalf of Dimitre Tzankov, Monika Tzan-kov, and Violetka Tzankov. Violetka Tzankov is Dimitre Tzankov’s ex-wife and Monika Tzankov is their daughter. The brief in this case and the certificate of interest list only Dimitre Tzankov as a party. Violetka divorced Dimitre Tzankov on June 2, 1995. The Board of Immigration appeals granted her request to sever her case from the appeal of Dimitre and Monika and remanded the case to the immigration judge for a hearing on. her application for an adjustment of status. Because the Board granted Violetka’s request, we assume that she does not appeal the Board’s decision to this court. We do, however, assume that Monika is a party to this appeal. Monika’s petition for asylum was derivative of her father's petition and no request has been made to sever her case from her father’s appeal. References in this opinion to petitioner or Mr. Tzankov therefore include Monika where appropriate.
 

 [2]
 

 . The State Department has the authority to issue advisory opinions under 8 C.F.R. § 208.11.
 

 [3]
 

 . Tzankov’s actual argument is that the Board abused its discretion in denying his application for asylum. Abuse of discretion is the appropriate standard of review only in cases involving discretionary denials of asylum.
 
 See Mitev v. I.N.S.,
 
 67 F.3d 1325, 1329-30 (7th Cir.1995) (stating that discretionary denial not at issue where petitioner failed to establish eligibility). The Board held that Tzankov was statutorily ineligible for asylum. This is a factual determination which is reviewed for substantial evidence.
 
 See Elias-Zacarias,
 
 502 U.S. at 481, 112 S.Ct. at 815;
 
 Krastev,
 
 101 F.3d at 1216.
 

 We note also that the Board held that Tzankov was ineligible for asylum because he established neither past persecution nor a well-founded fear of future persecution. Petitioner’s brief before this court focuses solely on his fear of future persecution, as did his brief on appeal to the Board. While we note that substantial evidence supports the Board's conclusion that none of the events alleged by Tzankov rise to the level of past persecution, this opinion will address the reasonableness of petitioner’s fear of future persecution, as it is the only issue raised before this court.