114 F.3d 1192
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Stefan PETKOV and Stefanka Tritchkova, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 96-3324.
 United States Court of Appeals, Seventh Circuit.
 Argued April 29, 1997.
Decided May 16, 1997.
 
 Before BAUER, EASTERBROOK and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Stefan Petkov and Stefanka Tritchkova, a husband and wife who are natives and citizens of Bulgaria, petition for review of the denial of their application for asylum and withholding of deportation.[1] Their basic argument is that substantial evidence does not support the decision of the BIA. See 8 U.S.C. § 1105a(a)(4). The petitioners claim that Petkov suffered past persecution on account of his Orthodox Christian religion, his anti-communist and pro-democratic political opinions, and his brother's escape from Bulgaria. See 8 U.S.C. § 1101(a)(42)(A). They also claim that the INS did not establish that there is little likelihood that Petkov would suffer persecution if he returned to Bulgaria. See Skalak v. INS, 944 F.2d 364, 365 (7th Cir.1991). We deny the petition for review.
 
 
 2
 The procedural history of this case is largely set out in the introduction to the Immigration Judge's (IJ) decision. The petitioners entered the United States as visitors for pleasure in January 1991; Petkov filed an application for asylum a few weeks later. While the initial application for asylum was filed pro se, the petitioners were represented by counsel at the deportation hearing on August 1993, in submitting a renewed application for asylum on February 1994, at the hearing on the application on September 1994, and in the appeal to the BIA. They are represented by the same counsel in this court.
 
 
 3
 Petkov was the only person to testify at the asylum hearing. According to his testimony, his first troubles began in 1969, when his brother fled Bulgaria. Petkov's brother became a United States citizen in 1972, and returned thereafter to Bulgaria on four occasions. Petkov was detained and interrogated by police several times over the years in connection with his brother's unlawful departure and subsequent visits. He alleged at the hearing that he was beaten during the first interrogation in 1969; he did not specify the duration, manner, or severity of the beating. During that same interrogation, he was questioned as to what he knew about his brother's escape, and told to denounce his brother publicly and to abandon any interest in leaving for America or in keeping in touch with his brother. Petkov did not publicly denounce his brother and did keep in contact with him. He was called to the police department and interrogated "[a]t least six or seven times, maybe more," regarding his brother. On at least one occasion, Petkov was told to cease any connection with his brother. Three of the interrogations occurred after his brother's visits in 1978, 1980, and 1986, where he was questioned about what he talked about with his brother, whether his brother had brought any anti-communist literature, and other similar topics. Police did not call Petkov for questioning after his brother's visit in 1990 (the year after Bulgarian dictator Todor Zhivkov was removed from power); however, on one occasion as Petkov was walking down the street, a policeman did ask him questions about the visit.
 
 
 4
 Petkov also claimed that other hardships resulted from his brother's escape from Bulgaria. He indicated that he was told "many times" by officials of the government or of his company that he could not receive a better job, pay increases, or other (unspecified) job benefits because he was the brother of someone who deserted the country. He also explained that his daughters were denied acceptance into the university despite their high grades in secondary school. One daughter was informed that she had not passed the entrance examination--even though lesser students that she had assisted with the examination did pass. The other daughter was told by an official when filling out her application that she should not apply because college was refused to many people who had relatives outside of Bulgaria.[2]
 
 
 5
 Petkov testified that he is a religious person and a member of the Orthodox Christian Church. He indicated that more than ten times during the 1970s and 1980s, while at church for prayers or religious celebrations, he was told to leave the church, pushed outside, and told not to come back--sometimes by persons in police clothing. He often went to churches outside of his neighborhood so that he would not be recognized. Even after the overthrow of Todor Zhivkov in 1989, he had difficulty going to services, and continued going to churches outside his neighborhood even though he was "very afraid" to do so.
 
 
 6
 Petkov testified that neither he nor anyone in his family had been a member of the Communist Party. In 1989, he joined a worker's rights organization (Podkrepa) and an anti-communist organization (Union of Democratic Forces, or C.D.C.). He was active in both organizations, soliciting new membership, distributing newspapers, participating in demonstrations, and the like. A police unit raided a political meeting he was attending at a church in 1989, killing another active anti-communist. Since 1992 (a year after his arrival in the United States), he has been a member of group in the United States called the Bulgarian National Front. He has attended meetings, raised money, and signed a petition demanding the resignation of President Zhelyu Zelev, whom Petkov asserts is pro-communist.
 
 
 7
 Petkov also summarized why he does not wish to return to Bulgaria. He stated that he had been "treated very badly" even though he "hadn't done anything." In Petkov's view, "the people are still the same," and would punish him for living in America and applying for American citizenship. He feared to go back to Bulgaria because "the communists are still there."
 
 
 8
 The IJ denied asylum and withholding of deportation, and granted voluntary departure. Petkov and Tritchkova appealed to the BIA, submitting a brief similar to the one they have submitted to this court. The BIA, in a detailed order, concluded that the detentions and interrogations, economic hardships, his daughters' rejection from the university, and interference with his religious activities did not constitute persecution. It also found little likelihood of future persecution, in light of Bulgaria's progress towards democracy and the Department of State's determination that "country conditions have so altered as to remove the presumption that past mistreatment in the Communist years will lead to mistreatment in the future"--neither of which was refuted by evidence from Petkov and Tritchkova. The BIA dismissed the appeal, and the petition for review ensued.
 
 
 9
 Before this court, Petkov claims that the evidence (in the form of his testimony) proved that he suffered past persecution. However, he does not come close to showing to this court " 'that the evidence he presented was so compelling that no reasonable factfinder could fail to find' " that he was persecuted.[3] Mitev v. INS, 67 F.3d 1325, 1330 (7th Cir.1995) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992)). Petkov does not point to evidence that he personally suffered any reprisals as a result of his political activities. As to official interference with his religious activities, the record supports the BIA's determination that Petkov "was able to attend church on a regular basis, albeit in an inconvenient manner," and was likewise able to hold other religious ceremonies. See Anton v. INS, 50 F.3d 469, 471, 472 (7th Cir.1995) (substantial evidence supported BIA determination that harassment, questioning, and threats based on petitioner's religious affiliation did not constitute persecution where petitioner was able to attend church services regularly).
 
 
 10
 Finally, the several apparently brief detentions and interrogations[4] over the years that resulted from his brother's escape are comparable to other claims which this court found less than compelling. See Zalega v. INS, 916 F.2d 1257, 1258-59, 1260 (7th Cir.1990) (three to five hours of detention and interrogation every two to three months for two years, as well as a thirty-six hour detention); see also Mitev, 67 F.3d at 1331 (collecting cases). Petkov did allege being beaten during one interrogation in 1969, but as the BIA noted, did not elaborate on the manner or severity of the beating. See Demirovski v. INS, 39 F.3d 177, 181 (7th Cir.1994) (BIA may appropriately deny asylum claim based on vague or conclusory testimony). He also did not mention the beating in either his pro se or counseled application for asylum, which the BIA could reasonably believe undermined the credibility of that allegation. Cf. id. (BIA entitled to find credibility problems with inconsistent testimony).
 
 
 11
 Even if Petkov had shown past persecution, he would not qualify for asylum. As the BIA indicated, the government had put forth evidence that the conditions in Bulgaria had changed. Petkov did not provide contrary evidence; only his own allegations supported his view of current conditions in Bulgaria. See Krastev v. INS, 101 F.3d 1213, 1218 (7th Cir.1996) (applicant's testimony without objective support in the record does not warrant overturning BIA decision denying asylum). Substantial evidence thus supported the BIA's conclusion that there was little likelihood that Petkov would suffer future persecution in Bulgaria. Cf. Boykov v. INS, 109 F.3d 413, 417-18 (7th Cir.1997) (State Department's 1994 report constituted substantial evidence that petitioner lacked a well-founded fear of persecution in Bulgaria). Thus, Petkov would need to show that "the [past] persecution from which he fled was especially heinous," such as that suffered by Jews in Nazi Germany or by victims of the Chinese Cultural Revolution. Bucur v. INS, 109 F.3d 399, 404-05 (7th Cir.1997) (citing 8 C.F.R. § 208.13(b)(1)(ii), and In re Chen, 20 I. & N. Dec. 16, 18-19 (1989)); see also Bachkova v. INS, 109 F.3d 376, 378-79 (7th Cir.1997); Skalak, 944 F.2d at 365. While Petkov alleged several hardships and several possibly traumatic incidents, they are certainly not of the severity that would qualify him for asylum, given the low likelihood of future persecution. The detentions, interrogations, economic travails, frustration of some opportunities for his children, and interference with religious practice are closer to discrimination or "mild" persecution than to severe persecution. Bucur, 109 F.3d at 406.
 
 
 12
 The petition for review is DENIED.
 
 
 
 [1]
 The appeal to the Board of Immigration Appeals (BIA) and the petition for review of the BIA's decision were filed on behalf of both Petkov and Tritchkova. Likewise, the appearance form filed in this court and certificate of interest in the opening brief list both Petkov and Tritchkova as parties. Yet, the cover of the opening brief names only Petkov as a petitioner, and counsel for Petkov and Tritchkova gave equivocal answers when asked at oral argument whether Tritchkova was also a petitioner. Nevertheless, we assume that Tritchkova is a party to this appeal, because her claim is entirely derivative of that of Petkov. See Tzankov v. INS, 107 F.3d 516, 517 n. 1 (7th Cir.1997)
 
 
 [2]
 According to Petkov's pro se asylum application, his daughters (who were then 30 and 20 years of age respectively) remained in Bulgaria when the petitioners arrived in the United States. Petkov testified at the asylum hearing that one of the daughters came to the United States in 1992, while the other was still living and working in Bulgaria
 
 
 [3]
 Petkov's best potential argument is one he fails to develop. He asserts in the facts and summary of argument portions of his brief merely that he was denied "employment" and "promotions" opportunities. He does not elaborate on the nature of these lost opportunities, or explain why the BIA erred in considering his economic situation. If, as he indicated at the asylum hearing, government officials denied him a chance to receive a better job and pay increases due to his brother's escape, he would appear to have a claim of economic persecution, i.e., "deliberate imposition of substantial economic disadvantage" on account of his membership in a particular social group. See Borca v. INS, 77 F.3d 210, 216 & n. 7 (7th Cir.1996). But even if Petkov had such a claim of past persecution, his petition for review would still fail, due to the changed country conditions and the fact that such persecution was not especially severe. See infra at 5
 
 
 [4]
 The BIA and IJ both read Petkov's testimony as indicating that the detentions and interrogations lasted for "brief periods." Petkov does not attempt to refute that characterization in his brief to this court