USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1557

 EMMANUEL J. FOROGLOU,

 Petitioner,

 v.

 IMMIGRATION AND NATURALIZATION SERVICE,

 Respondent.

 ON PETITION FOR REVIEW OF AN ORDER OF

 THE BOARD OF IMMIGRATION APPEALS

 Before

 Torruella, Chief Judge,
 
 Coffin, Senior Circuit Judge,
 
 and Boudin, Circuit Judge.
 
 

 Pauline M. Schwartz with whom Paul Shearman Allen & Associateswas on brief for petitioner.
 John M. McAdams, Jr. with whom Frank W. Hunger, Assistant
Attorney General, Department of Justice, Civil Division, and Karen
Ann Hunold, Senior Litigation Counsel, Office of Immigration
Litigation, were on brief for respondent.

March 5, 1999

 
 

 BOUDIN, Circuit Judge. In this immigration appeal, the
background facts are not disputed. Emmanuel J. Foroglou
("Foroglou"), a native and citizen of Greece, entered the United
States on a student visa in August 1983, to pursue graduate studies
in economics at Brown University. When he left Brown to teach at
Utica University in 1987, his visa status was changed to H-1B, a
non-immigrant professional visa. However, when Foroglou left his
job at Utica in 1989 (and thus became ineligible for an H-1B visa),
he did not inform the INS.
 After working in Chicago for several years, Foroglou
moved to Houlton, Maine. Shortly after he moved to Houlton, he
came to the attention of the Immigration and Naturalization
Service. In October 1993, Foroglou was served with an order to
show cause why he should not be deported--the beginning of
deportation proceedings. See 8 C.F.R. 242.1 (1993). Foroglou
did not dispute the facts as to entry and visa status but claimed
refugee status based on his objections to the military draft laws
of Greece. He has no family or relatives in the United States.
 Shortly after entering the United States, Foroglou,
professedly an atheist, began to develop a belief in Objectivism,
a philosophy developed by the twentieth-century author Ayn Rand. 
He says that he now believes that the draft "negates man's
fundamental right to life and established [sic] the fundamental
principle of statism: that a man's life belongs to the state, and
that the state may claim it by compelling him to sacrifice it in
battle." Ayn Rand, Capitalism: The Unknown Ideal, 227 (1967)
(quoted in Foroglou's application for asylum). Although he is
opposed to any military draft, Foroglou is not opposed to war or
fighting; his beliefs are only concerned with the fact that the
draft is involuntary.
 Based on the administrative record in this case, it
appears that under Greek law, all males between the ages of 18 and
50 are subject to military service for 24 months. Since 1977,
draftees may choose instead to serve, for twice the usual amount of
time, in non-combatant roles. In addition, in 1997, an alternative
civilian service option was instituted for conscientious objectors;
it is about 12-18 months longer than combatant military service,
and Foroglou would probably not qualify for this alternative
because he is not opposed to the use of weapons.
 In 1980, Foroglou had received a 10-year student
deferment of military service but he apparently did nothing in 1990
to renew it or to declare himself a conscientious objector. 
However, after the INS served its show cause order, Foroglou says
that he wrote to the Greek Consulate in May 1994, to request a
passport to replace the one being held by the INS and to declare
himself a conscientious objector. The Greek consul responded that
it could not issue Foroglou a passport until he had completed his
military service and that Foroglou would have to deal with his
local draft office (in Greece) about declaring himself a
conscientious objector.
 The first hearing on Foroglou's deportation was held on
December 1, 1993, and thereafter continued so Foroglou could file
applications for political asylum and suspension of deportation. 
See 8 U.S.C. 1158, 1253(h). Foroglou filed these applications
and also applied for voluntary departure in lieu of deportation,
see 8 U.S.C. 1254(e). Testimony, consistent with the facts
described above, was completed on December 1, 1994. The hearing
was reconvened again on September 6, 1995, and Foroglou moved to
withdraw his application for suspension of deportation. The
immigration judge granted his motion with prejudice and proceeded
to present his decision.
 In the decision, the immigration judge found that
Foroglou had not established that he had a well-founded fear of
persecution on account of his religion, race, nationality,
membership in a particular social group, or political opinion if he
were to return to Greece, or that any punishment for failing to
comply with Greek conscription law would be disproportionately
severe on account of any one of these factors. He denied
Foroglou's application for asylum, but granted Foroglou voluntary
departure within 30 days in lieu of deportation.
 Eight days later, Foroglou filed a notice of appeal with
the Board of Immigration Appeals. In February 1998, before his
appeal was heard, Foroglou filed with the Board additional evidence
and a motion to remand to the immigration judge. The new evidence
related to the new 1997 civilian service option and Foroglou's
claim that he would not qualify for this alternative service. On
April 30, 1998, the Board dismissed Foroglou's appeal, denied his
motion to remand, and again granted him 30 days in which to
voluntarily depart. Foroglou filed a petition for review with this
court and moved for a stay of deportation, which was granted on May
21, 1998.
 On this appeal, we begin with the Board's denial of
Foroglou's application for political asylum. Its factual
determinations are conclusive if "supported by reasonable,
substantial and probative evidence on the record considered as a
whole." 8 U.S.C. 1105a(a)(4); see also Gebremichael v. INS, 10
F.3d 28, 34 (1st Cir. 1993). The Board's application of the legal
standards to specific facts is also entitled to deference. SeeRavindran v. INS, 976 F.2d 754, 758 (1st Cir. 1992). Abstract
rulings of law are subject to de novo review. See Maldonado-Cruzv. INS, 883 F.2d 788, 791 (9th Cir. 1989). 
 The statute governing asylum, 8 U.S.C. 1158(b), states
that an alien can be granted asylum, in the discretion of the
Attorney General, if the alien is a "refugee" within the meaning of
8 U.S.C. 1101(a)(42)(A), namely, someone who is unable or
unwilling to return to his home country because of "persecution or
a well-founded fear of persecution on account of race, religion,
nationality, membership in a particular social group, or political
opinion." The Attorney General does not resist review of the
Board's determination as to whether an applicant meets any of the
five enumerated grounds.
 To qualify for asylum, the applicant must show that he
actually fears persecution (a subjective issue), and that there is
a "reasonable possibility" that persecution would actually occur
(an objective issue), Ravindran, 976 F.2d at 758, but no more than
this is required. See Cardoza-Fonseca, 480 U.S. at 430-32. If the
applicant has shown no personal threat against him, he must show
that there is a practice of persecution against a group or category
of persons within the five enumerated grounds, and that he is
identified with that group. See 8 C.F.R. 208.13(b)(2)(i);
Meguenine v. INS, 139 F.3d 25, 28 (1st Cir. 1998).
 It is not persecution for a government to require
military service of its citizens. See Krastev v. INS, 101 F.3d
1213, 1217 (7th Cir. 1996); see also Umanzor-Alvarado v. INS, 896
F.2d 14, 15 (1st Cir. 1990). However, a person may qualify as a
refugee if he is singled out for service because he is a member of
an enumerated group or if--when he refuses service--he is subject
to disproportionate punishment on account of his group membership. 
See M.A. AXXXXXXXX v. INS, 899 F.2d 304, 312 (4th Cir. 1990) (en
banc); Matter of R--R--, 20 I. & N. Dec. 547, 551 (1992).
 In this case, Greek law subjects all men to military
service. There is no evidence that the Greek government has
threatened Foroglou with military service because he is an
Objectivist, nor is there any evidence that the Greek government
targets Objectivists who refuse to serve for disproportionate
punishment. According to Foroglou's submissions, Amnesty
International apparently believes that the Greek government has
disproportionately punished Jehovah's Witnesses who refuse the
draft, but Foroglou is not a Jehovah's Witness.
 Foroglou's main argument on this appeal is built on two
related premises: first, that under the federal statutes, it is
"persecution," without more, for a country to refuse conscientious-
objector status to a bona fide conscientious objector and instead
to punish the objector for refusing to serve; and second, that a
belief in Objectivism is as good a basis for such conscientious-
objector status as being a religious pacifist opposed to
participating in war in any form. We once reserved judgment on the
first premise, see Umanzor-Alvarado, 896 F.2d at 15, and now think
the issue is resolved by later Supreme Court cases.
 Nothing in the language of the federal definition of
refugee (requiring persecution on one of the five enumerated
grounds) suggests that it applies when a foreign country simply
insists on universal military service for all citizens and provides
no exemptions. In such a case, the resistor might refuse service
out of religious or political conviction; but punishment for
refusing to serve would not be "persecution" (even assuming the
that term is apt) "on account of" the objector's religious or
political opinion, see 8 U.S.C. 1101(a)(42)(A), but instead would
be "because of his refusal to fight" for the government. INS v. 
Elias-Zacarias, 502 U.S. 478, 483 (1992).
 Some might think that refugee status should be offered to
all persons fleeing from punishment for anything done "by reason of
conscience," regardless of whether the "persecutor" singles out
victims on account of their religion, political beliefs, or the
like. However, this country itself makes criminal various refusals
based on reasons of conscience, so it is hard to imagine an
immigration statute being cast quite so broadly. In all events,
the refugee definition enacted by Congress is limited to
persecution "on account of" the enumerated grounds, and it is for
Congress -not the courts--to enlarge it.
 It is quite true that the Ninth Circuit once took the
opposite view in Canas-Segovia v. INS, 902 F.2d 717, 725-26 (9th
Cir. 1990) (Canas-Segovia I), relying in part upon a U.N.
"handbook" on refugee matters; but its decision was vacated by the
Supreme Court, INS v. Canas-Segovia, 502 U.S. 1086 (1992). Nor
does it matter that the U.N. advises that it is "open [to states]
to grant refugee status" to conscientious objectors. It is open
to Congress to adopt that course, but it has not done so here. 
Foroglou's argument thus founders on its first premise, and we need
not address the merits of his second--namely, that Objectivism
should be equated with traditional conscientious objector status.
 A different issue is raised by Foroglou's motion to
remand. Pointing to Greece's new 1997 law providing for non-
military alternative service, he says that conventionally religious
objectors would qualify but Objectivists would not. Why this
should matter to Foroglou is not clear, since his objection is to
any compelled service by the state. In any event, we do not
believe that providing religious objectors an exemption constitutes
persecution of all other non-exempted Greek citizens.
 The asylum statute does not inflict on foreign
governments the obligation to construct to their own draft laws to
conform to this nation's own highly complex equal protection
jurisprudence. Indeed, it is doubtful that the kinds of
distinctions that Foroglou attributes to the 1997 law would be
unconstitutional in this country, if Congress chose to draw them. 
See Gillette, 401 U.S. at 446-48 (requiring absolute pacifist
belief does not run afoul of equal protection concerns). To
describe as "persecution" a set of foreign-country exemption rules
not all that different than our own is a view that would be hard to
ascribe to Congress under any reading of the refugee statute.
 Foroglou's remaining arguments need only the briefest
mention. The Ninth Circuit's decision on remand in Canas-Segovia,
although cited by Foroglou, is not on point. It is beside the
point whether Foroglou will be punished for draft evasion in
Greece, so long as it is routine punishment that would be inflicted
on any evader. Finally, we agree that the immigration judge showed
considerable annoyance with Foroglou's claims, but disagreement
with Foroglou's arguments is not proof of bias. 
 Affirmed.