**Emmanuel J. FOROGLOU, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 98–1557.

United States Court of Appeals, First Circuit.

Heard Jan. 5, 1999.

Decided March 5, 1999.

Pauline M. Schwartz with whom Paul Shearman Allen & Associates was on brief for petitioner.

John M. McAdams, Jr. with whom Frank W. Hunger, Assistant Attorney General, Department of Justice, Civil Division, and Karen Ann Hunold, Senior Litigation Counsel, Office of Immigration Litigation, were on brief for respondent.

Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

In this immigration appeal, the background facts are not disputed. Emmanuel J. Foroglou ("Foroglou"), a native and citizen of Greece, entered the United States on a student visa in August 1983, to pursue graduate studies in economics at Brown University. When he left Brown to teach at Utica University in 1987, his visa status was changed to H–1B, a non-immigrant professional visa. However, when Foroglou left his job at Utica in 1989 (and thus became ineligible for an H–1B visa), he did not inform the INS.

After working in Chicago for several years, Foroglou moved to Houlton, Maine. Shortly after he moved to Houlton, he came to the attention of the Immigration and Naturalization Service. In October 1993, Foroglou was served with an order to show cause why he should not be deported—the beginning of deportation proceedings. *See* 8 C.F.R. § 242.1 (1993). Foroglou did not dispute the facts as to entry and visa status but claimed refugee status based on his objections to the military draft laws of Greece. He has no family or relatives in the United States.

Shortly after entering the United States, Foroglou, professedly an atheist, began to develop a belief in Objectivism, a philosophy developed by the twentieth-century author Ayn Rand. He says that he now believes that the draft "negates man's fundamental right to life and established [sic] the fundamental principle of statism: that a man's life belongs to the state, and that the state may claim it by compelling him to sacrifice it in battle." Ayn Rand, *Capitalism: The Unknown Ideal,* 227 (1967) (quoted in Foroglou's application for asylum). Although he is opposed to any military draft, Foroglou is not opposed to war or fighting; his beliefs are only concerned with the fact that the draft is involuntary.

Based on the administrative record in this case, it appears that under Greek law, all males between the ages of 18 and 50 are subject to military service for 24 months. Since 1977, draftees may choose instead to serve, for twice the usual amount of time, in non-combatant roles. In addition, in 1997, an alternative civilian service option was insti-

tuted for conscientious objectors; it is about 12–18 months longer than combatant military service, and Foroglou would probably not qualify for this alternative because he is not opposed to the use of weapons.

In 1980, Foroglou had received a 10–year student deferment of military service but he apparently did nothing in 1990 to renew it or to declare himself a conscientious objector. However, after the INS served its show cause order, Foroglou says that he wrote to the Greek Consulate in May 1994, to request a passport to replace the one being held by the INS and to declare himself a conscientious objector. The Greek consul responded that it could not issue Foroglou a passport until he had completed his military service and that Foroglou would have to deal with his local draft office (in Greece) about declaring himself a conscientious objector.

The first hearing on Foroglou's deportation was held on December 1, 1993, and thereafter continued so Foroglou could file applications for political asylum and suspension of deportation. *See* 8 U.S.C. §§ 1158, 1253(h). Foroglou filed these applications and also applied for voluntary departure in lieu of deportation, *see* 8 U.S.C. § 1254(e). Testimony, consistent with the facts described above, was completed on December 1, 1994. The hearing was reconvened again on September 6, 1995, and Foroglou moved to withdraw his application for suspension of deportation. The immigration judge granted his motion with prejudice and proceeded to present his decision.

In the decision, the immigration judge found that Foroglou had not established that he had a well-founded fear of persecution on account of his religion, race, nationality, membership in a particular social group, or political opinion if he were to return to Greece, or that any punishment for failing to comply with Greek conscription law would be disproportionately severe on account of any one of these factors. He denied Foroglou's application for asylum, but granted Foroglou

voluntary departure within 30 days in lieu of deportation.

Eight days later, Foroglou filed a notice of appeal with the Board of Immigration Appeals. In February 1998, before his appeal was heard, Foroglou filed with the Board additional evidence and a motion to remand to the immigration judge. The new evidence related to the new 1997 civilian service option and Foroglou's claim that he would not qualify for this alternative service. On April 30, 1998, the Board dismissed Foroglou's appeal, denied his motion to remand, and again granted him 30 days in which to voluntarily depart. Foroglou filed a petition for review with this court and moved for a stay of deportation, which was granted on May 21, 1998.

■■■ On this appeal, we begin with the Board's denial of Foroglou's application for political asylum. Its factual determinations are conclusive if "supported by reasonable, substantial and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4); *see also Gebremichael v. INS*, 10 F.3d 28, 34 (1st Cir.1993). The Board's application of the legal standards to specific facts is also entitled to deference. *See Ravindran v. INS*, 976 F.2d 754, 758 (1st Cir. 1992). Abstract rulings of law are subject to *de novo* review. *See Maldonado–Cruz v. U.S. Department of Immigration and Naturalization*, 883 F.2d 788, 791 (9th Cir.1989).

■■■ The statute governing asylum, 8 U.S.C. § 1158(b), states that an alien can be granted asylum, in the discretion of the Attorney General, if the alien is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A), namely, someone who is unable or unwilling to return to his home country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." The Attorney General does not resist review of the Board's determination as to whether an applicant meets any of the five enumerated grounds.[1]

---

**1.** The same five grounds can be made the subject of an application for *mandatory* withholding of deportation under 8 U.S.C. § 1253(h) (1995) (amended in 1996, and now covered by 8 C.F.R.

§ 208), but the burden of proof is greater and the relief less far reaching. *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 430, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

■ To qualify for asylum, the applicant must show that he actually fears persecution (a subjective issue), and that there is a "reasonable possibility" that persecution would actually occur (an objective issue), *Ravindran,* 976 F.2d at 758, but no more than this is required. *See Cardoza–Fonseca,* 480 U.S. at 430–32, 107 S.Ct. 1207. If the applicant has shown no personal threat against him, he must show that there is a practice of persecution against a group or category of persons within the five enumerated grounds, and that he is identified with that group. *See* 8 C.F.R. § 208.13(b)(2)(i); *Meguenine v. INS,* 139 F.3d 25, 28 (1st Cir.1998).

■ It is not persecution for a government to require military service of its citizens. *See Krastev v. INS,* 101 F.3d 1213, 1217 (7th Cir.1996); *see also Umanzor–Alvarado v. INS,* 896 F.2d 14, 15 (1st Cir.1990). However, a person may qualify as a refugee if he is singled out for service *because* he is a member of an enumerated group or if—when he refuses service—he is subject to disproportionate punishment *on account of* his group membership. *See M.A. A26851062 v. INS,* 899 F.2d 304, 312 (4th Cir.1990) (en banc); *Matter of R—R—,* 20 I. & N. Dec. 547, 551 (1992).

■ In this case, Greek law subjects all men to military service. There is no evidence that the Greek government has threatened Foroglou with military service because he is an Objectivist, nor is there any evidence that the Greek government targets Objectivists who refuse to serve for disproportionate punishment. According to Foroglou's submissions, Amnesty International apparently believes that the Greek government has disproportionately punished Jehovah's Witnesses who refuse the draft, but Foroglou is not a Jehovah's Witness.

Foroglou's main argument on this appeal is built on two related premises: first, that under the federal statutes, it is "persecution," without more, for a country to refuse conscientious-objector status to a *bona fide*

conscientious objector and instead to punish the objector for refusing to serve; and second, that a belief in Objectivism is as good a basis for such conscientious-objector status as being a religious pacifist opposed to participating in war in any form. We once reserved judgment on the first premise, *see Umanzor–Alvarado,* 896 F.2d at 15, and now think the issue is resolved by later Supreme Court cases.

■ Nothing in the language of the federal definition of refugee (requiring persecution on one of the five enumerated grounds) suggests that it applies when a foreign country simply insists on universal military service for all citizens and provides no exemptions. In such a case, the resistor might refuse service out of religious or political conviction; but punishment for refusing to serve would not be "persecution" (even assuming the that term is apt) "on account of" the objector's religious or political opinion, *see* 8 U.S.C. § 1101(a)(42)(A), but instead would be "because of his refusal to fight" for the government. *INS v. Elias–Zacarias,* 502 U.S. 478, 483, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

■ Some might think that refugee status should be offered to all persons fleeing from punishment for anything done "by reason of conscience," regardless of whether the "persecutor" singles out victims on account of their religion, political beliefs, or the like. However, this country itself makes *criminal* various refusals based on reasons of conscience,[2] so it is hard to imagine an immigration statute being cast quite so broadly. In all events, the refugee definition enacted by Congress is limited to persecution "on account of" the enumerated grounds, and it is for Congress——not the courts—to enlarge it.

It is quite true that the Ninth Circuit once took the opposite view in *Canas–Segovia v. INS,* 902 F.2d 717, 725–26 (9th Cir.1990) (*Canas–Segovia I* ), relying in part upon a U.N. "handbook" on refugee matters; but its decision was vacated by the Supreme Court, *INS v. Canas–Segovia,* 502 U.S. 1086, 112

---

**2.** This includes conscientious objectors who do not fall within the confines of the exemption statute, *see Gillette v. United States,* 401 U.S. 437, 461–62, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); people whose religion prohibits the payment of

certain taxes, *see United States v. Lee,* 455 U.S. 252, 260, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982); individuals who refuse to be vaccinated, *see Jacobson v. Massachusetts,* 197 U.S. 11, 26–27, 25 S.Ct. 358, 49 L.Ed. 643 (1905).

S.Ct. 1152, 117 L.Ed.2d 401 (1992). Nor does it matter that the U.N. advises that it is "open [to states] to grant refugee status" to conscientious objectors.[3] It is open to Congress to adopt that course, but it has not done so here. Foroglou's argument thus founders on its first premise, and we need not address the merits of his second—namely, that Objectivism should be equated with traditional conscientious objector status.

A different issue is raised by Foroglou's motion to remand. Pointing to Greece's new 1997 law providing for non-military alternative service, he says that conventionally religious objectors would qualify but Objectivists would not. Why this should matter to Foroglou is not clear, since his objection is to *any* compelled service by the state. In any event, we do not believe that providing religious objectors an exemption constitutes persecution of all other non-exempted Greek citizens.

The asylum statute does not inflict on foreign governments the obligation to construct their own draft laws to conform to this nation's own highly complex equal protection jurisprudence. Indeed, it is doubtful that the kinds of distinctions that Foroglou attributes to the 1997 law would be unconstitutional in this country, if Congress chose to draw them. *See Gillette,* 401 U.S. at 446–48, 91 S.Ct. 828 (requiring absolute pacifist belief does not run afoul of equal protection concerns). To describe as "persecution" a set of foreign-country exemption rules not all that different than our own is a view that would be hard to ascribe to Congress under any reading of the refugee statute.

 Foroglou's remaining arguments need only the briefest mention. The Ninth Circuit's decision on remand in *Canas–Segovia,* although cited by Foroglou, is not on point.[4] It is beside the point whether Foroglou will be punished for draft evasion in Greece, so long as it is routine punishment that would be inflicted on any evader. Finally, we agree that the immigration judge showed considerable annoyance with Foroglou's claims, but disagreement with Foroglou's arguments is not proof of bias.

*Affirmed.*

---

**3.** Office of the United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status* § 173 at 40–41 (1979). The Handbook was earlier described by the Supreme Court as giving "guidance" in construing the statute, *Cardoza–Fonseca,* 480 U.S. at 439, n. 22, 107 S.Ct. 1207, but it is more helpful on some issues than others and cannot vary the explicit terms of the statute. The Handbook itself makes clear that it does not purport to be construing particular statutes of individual states. *See Handbook,* preface (ii), (vii).

**4.** On remand, the Ninth Circuit conceded that its earlier rationale was no longer valid but concluded that the government would *in fact* impute a political position to the asylum applicant and punish him severely on that account. *Canas–Segovia v. INS,* 970 F.2d 599, 601–02 (9th Cir. 1992). *See also Canas–Segovia I,* 902 F.2d at 728.