**Enver VUCIC, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

**Docket No. 01–4178.**

United States Court of Appeals, Second Circuit.

Oct. 18, 2002.

Matthew L. Guadagno, Bretz & Coven, LLP, New York, NY, for Petitioner.

Megan L. Brackney, Assistant United States Attorney (James B. Comey, United States Attorney for the Southern District of New York, Kathy S. Marks, Jeffrey Oestericher, of counsel), New York, NY, for Respondent.

Present CARDAMONE, MINER and SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED AND DECREED that the petition for review of

the Board of Immigration Appeals' order is hereby DENIED.

Enver Vucic ("Vucic") is a native and citizen of Montenegro, a state in the Federal Republic of Yugoslavia ("FRY"). Vucic fled Montenegro after he was drafted to serve in the FRY army, and arrived in the United States in 1999. He requested asylum, claiming persecution on the basis of his Albanian ethnicity and his Muslim religion. The Immigration Judge denied the asylum application, and Vucic appealed to the Board of Immigration Appeals ("BIA"). The BIA dismissed the appeal, holding that Vucic failed to establish grounds for granting asylum. Vucic petitions this Court to review the BIA's order, and we deny the petition.

This Court has jurisdiction over Vucic's petition for review of the BIA's order pursuant to Immigration and Naturalization Act ("INA") § 242(a)(1), 8 U.S.C. § 1252(a)(1). Vucic's removal to Spain during the pendency of this petition does not render his petition moot. *See* INA § 242, 8 U.S.C. § 1252; *see also Moore v. Ashcroft,* 251 F.3d 919, 922 (11th Cir.2001); *Tapia Garcia v. INS,* 237 F.3d 1216, 1218–20 (10th Cir.2001). And as respondent concedes, Vucic has Article III standing to challenge the BIA's decision: the denial of Vucic's asylum application is an injury, traceable to respondent's conduct, that would be redressed by a favorable ruling by this Court. *See Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *cf. Max–George v. Reno,* 205 F.3d 194, 196 (5th Cir.2000), *vacated on other grounds,* 277 F.3d 1373 (5th Cir.2001); *United States v. Suleiman,* 208 F.3d 32, 38 (2d Cir.2000).

In order to be eligible for asylum under INA § 208(b)(1), 8 U.S.C. § 1158(b)(1), an applicant must first demonstrate that he is a "refugee," defined in relevant part as any person who is unable or unwilling to return to his or her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).

This Court is required to give considerable deference to the BIA's denial of asylum. *See INS v. Elias–Zacarias,* 502 U.S. 478, 481 & n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) ("The BIA's determination that [petitioner] was not eligible for asylum ... can be reversed only if the evidence presented by [petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed."); *Abankwah v. INS,* 185 F.3d 18, 22–23 (2d Cir.1999).

A showing of past persecution on one of the five listed grounds creates the presumption of a well-founded fear of future persecution, and can serve as the basis for an asylum application. 8 C.F.R. § 208.13(b)(1) (2000). The BIA found that Vucic had not suffered past persecution: "The applicant ... has never been imprisoned or harmed and he does not allege facts which rise to the level of past persecution." The facts Vucic alleges in his petition for review are the same that he presented to the BIA, and cannot be read to compel a conclusion contrary to what the BIA found. *See, e.g., Tamas–Mercea v. Reno,* 222 F.3d 417, 424 (7th Cir.2000); *Bucur v. INS,* 109 F.3d 399, 402 (7th Cir. 1997); *Ghaly v. INS,* 58 F.3d 1425, 1431 (9th Cir.1995).

Vucic also claims that he has a well-founded fear of future persecution if returned to the FRY. In general, a government does not engage in persecution when it requires its citizens to perform military services or prosecutes them for failure to

serve. *See Foroglou v. INS*, 170 F.3d 68, 71 (1st Cir.1999); *Krastev v. INS*, 101 F.3d 1213, 1217 (7th Cir.1996); *Matter of R–R–*, 20 I & N Dec. 547, 551 (BIA 1992); *Matter of A–G–*, 19 I & N Dec. 502, 506 (BIA 1987). Forced military service can constitute persecution where "disproportionately severe punishment would result on account of one of the five [listed] grounds," or where the applicant would be required to commit human rights abuses. *Matter of A–G–*, 19 I & N Dec. at 506; *see also Foroglou*, 170 F.3d at 71. On close review of Vucic's brief and the supporting materials, we are unable to conclude that there is sufficient evidence to disturb the BIA's finding that Vucic has met neither exception. In reaching its conclusion, the BIA relied on the State Department's 1999 Country Report on Human Rights Practices in Serbia–Montenegro, which states

that Montenegro resisted the FRY's attempts to draft Montenegrin citizens, that efforts to enforce the draft in Montenegro were largely ineffective and have generally ceased, and that Montenegro granted amnesty in 1999 to draft evaders. Vucic has not presented evidence sufficient to compel a contrary conclusion,[1] and we are unable to disturb the BIA's denial of asylum.

We have considered Vucic's other claims and find them to be without merit. The petition for review of the BIA's order denying Vucic's claim for asylum is DENIED.

---

1. In fact, the government acknowledged during oral argument, and counsel for Vucic did not dispute, that subsequent to Montenegro granting amnesty to draft evaders in 1999, the FRY enacted a broad national amnesty for draft evasion as well. *See 2001 Country Reports on Human Rights Practices: Federal Republic of Yugoslavia, available at* http://www.st ate. gov/g/drl/rls/hrrpt/2001/eur/8369.htm ("In February [2001] the Yugoslav Government passed a law that granted amnesty to conscientious objectors and draft evaders who refused to take up arms from April 27, 1992 to October 7, 2000.... As the result of [the] February amnesty ..., draft evaders were able to travel freely without fear of arrest, and many have returned to the country.")